Rebecca R. Hanson (admitted *pro hac vice*)
Taylor A. Marcusson (admitted *pro hac vice*)
**REED SMITH LLP**
10 S. Wacker Dr., 40th Floor
Chicago, Illinois 60606
Telephone: (312) 207-1000
rhanson@reedsmith.com
tmarcusson@reedsmith.com

*Attorneys for Defendants*

THE UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA, CENTRAL DIVISION

| | |
|---|---|
| MICHAEL A., and PEYTON A.,<br><br>            Plaintiffs,<br>vs.<br><br>UNITED HEALTHCARE INSURANCE COMPANY, and UNITED BEHAVIORAL HEALTH,<br><br>            Defendants. | **UNITEDHEALTHCARE INSURANCE COMPANY AND UNITED BEHAVIORAL HEALTH'S ANSWER AND DEFENSES TO PLAINTIFFS' COMPLAINT**<br><br>Case No. 3:25-cv-8005 |

Defendants UnitedHealthcare Insurance Company and United Behavioral Health (collectively, "United") hereby submit their Answer and Defenses to the First Complaint ("Complaint") (Dkt. No. 1) of Michael A. and Peyton A. (collectively, "Plaintiffs") by responding to the numbered paragraphs of the Complaint as follows:

**PARTIES, JURISDICTION AND VENUE**

1.    **Michael and Peyton are natural persons residing in Yavapai County, Arizona. Michael is Peyton's father.**

**Answer to No. 1.**    Upon information and belief, admitted.

2.    **United Healthcare Insurance Company is headquartered in Hennepin County, Minnesota and was the insurer and claims administrator, as well as the fiduciary under ERISA for the Plan during the treatment at issue in this case. United Behavioral Health is the mental health arm of United Healthcare Insurance Company and was closely involved with the processing of the appeals and claims at issue in this case.**

**Answer to No. 2.**    United admits it is an insurance company headquartered in Hennepin County, Minnesota and that it was the insurer and claims administrator for the Plan during the time period associated with the treatment at issue in this case. United admits that United Behavioral Health administers mental health claims on behalf of and at the direction of the Plan, including the claims in this case. The remaining allegations in Paragraph 2 constitute legal assertions to which no response is required. To the extent a response is required, United denies any remaining allegations in Paragraph 2.

3.    **The Plan is a fully insured employee welfare benefits plan under 29 U.S.C. §1001 et. seq., the Employee Retirement Income Security Act of 1974 ("ERISA"). Michael was a participant in the Plan and Peyton was a beneficiary of the Plan at all relevant times.**

**Answer to No. 3.**    United admits the allegations in Paragraph 3.

4.    **Peyton received medical care and treatment at New Haven Residential Treatment Center ("New Haven") beginning on November 19, 2020, and Spring Ridge Academy ("Spring Ridge") beginning on December 7, 2021. At the time treatment took place, New Haven and Spring Ridge were treatment facilities which provided sub-acute treatment to adolescents with mental health, behavioral, and/or substance abuse problems. New Haven is in Utah County Utah, and Spring Ridge was in Arizona.**

**Answer to No. 4.**    United admits that written records in its possession reflect that Peyton received services at New Haven Residential Treatment Center ("New Haven") from November 19, 2020 to August 9, 2021. United admits that written records in its possession reflect that Peyton received services at Spring Ridge Academy ("Spring Ridge") from December 7, 2021 to June 16,

2022. United is without knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in Paragraph 4, and therefore denies same.

5.      **United denied claims for payment of Peyton's medical expenses in connection with her treatment at New Haven and Spring Ridge.**

**Answer to No. 5.**      United admits it denied claims for payment of Peyton's treatment at New

Haven and Spring Ridge. United denies the remaining allegations in Paragraph 5.

6.      **This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.**

**Answer to No. 6.**      The allegations in Paragraph 6 constitute legal conclusions to which no

response is required. Further answering, United does not contest jurisdiction in this case.

7.      **Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, because United does business in Utah and has a large claims processing facility in Salt Lake City where the claims and appeals relevant to this case were sent for processing. Furthermore, the treatment at issue took place at least partially in Utah.**

**Answer to No. 7.**      The allegations in Paragraph 7 constitute legal conclusions to which no

response is required. Further answering, United does not contest venue in this case now that the

case has been transferred to this Court.

8.      **In addition, the Plaintiffs have been informed and reasonably believe that litigating the case outside of Utah will likely lead to substantially increased litigation costs they will be responsible to pay and that would not be incurred if venue of the case remains in Utah. Finally, given the sensitive nature of the medical treatment at issue, it is the Plaintiffs' desire that the case be resolved in the State of Utah where it is more likely their privacy will be preserved.**

**Answer to No. 8.**      The allegations in Paragraph 8 constitute legal conclusions to which no

response is required. To the extent a response is required, United denies the allegations.

9.      **The remedies the Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C.**

**§1132(a)(1)(B), an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).**

**Answer to No. 9.**     The statutory provisions and the Plan set out in Paragraph 9 are contained in written documents that speak for themselves, and United refers to those documents for their true meaning and effect. United denies the allegations in Paragraph 9 to the extent that they seek to characterize or construe the contents of those documents, make improper and inaccurate legal assertions about the contents of those documents, or are otherwise inconsistent with those documents. United admits that Plaintiffs seek the remedies delineated in Paragraph 9 of the Complaint but denies that the Plaintiffs are entitled to any remedy or other relief in this matter.

## BACKGROUND FACTS

### New Haven

10.    **Peyton was admitted to New Haven on November 19, 2020, to address problems which included post-traumatic stress disorder, major depressive disorder, anxiety, substance abuse (which included methamphetamine, tobacco, alcohol, benzodiazepine, and hallucinogen use among others), oppositional behaviors, suicidal thoughts, self-harming, and body image issues which had not been resolved in other levels of care.**

**Answer to No. 10.**     United admits that written records in its possession reflect that Peyton was admitted to New Haven on November 19, 2020. The remaining allegations in Paragraph 10 of the Complaint reference a written document that speaks for itself, and United refers to that document for its true meaning and effect. United denies the allegations in Paragraph 10 to the extent they seek to characterize or construe the contents of that document, make improper and inaccurate legal conclusions about the contents of that document, or are otherwise inconsistent with that document. United denies any remaining allegations in Paragraph 10.

11.    **Peyton at times traded sex for drugs, stole from family, shoplifted, and sold drugs to support her habit. She often used until she blacked out and she even started having**

**seizures. She was in abusive relationships, restricted her food intake, and was asked to leave her school for using substances while on campus.**

**Answer to No. 11.**    United is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 11, and therefore denies same.

12.    **In a letter dated February 12, 2021, United denied payment for Peyton's treatment at New Haven from February 10, 2021, forward. The letter gave the following justification for the denial:**

**Benefit coverage of Mental Health Residential Treatment Level of Care is not available as of 02/10/2021 and forward.**

**Your request was reviewed. We have denied the medical services requested. We reviewed your clinical case notes. The criteria are not met because:**

**     * You are getting help with mood and anxiety problems.**
**     * You have made progress during Residential care.**
**     * You have learned new insights and better coping skills.**
**     * You no longer require around the clock monitoring.**

**You can continue your recovery in a Partial Hospitalization Program Level of Care setting. This care is available in your area and would be covered by your health plan.**

**Answer to No. 12.**    United admits that written records in its possession reflect that it sent Plaintiffs a letter dated February 12, 2021. The remaining allegations in Paragraph 12 of the Complaint reference a written document that speaks for itself, and United refers to that document for its true meaning and effect. United denies the allegations in Paragraph 12 to the extent they seek to characterize or construe the contents of that document, make improper and inaccurate legal conclusions about the contents of that document, or are otherwise inconsistent with that document. United denies any remaining allegations in Paragraph 12.

13.    **In a letter dated August 9, 2021, Morgan Allen, an appeals specialist from Bridgeway Billing appealed this denial on Plaintiffs' behalf. Morgan wrote that Peyton was a then sixteen-year-old with a history of disruptive mood dysregulation disorder and substance use which caused her to experience significant dysfunction in her life.**

**Answer to No. 13.**    United admits that written records in its possession show that Bridgeway Billing submitted a facsimile to United dated August 9, 2021. The remaining allegations in Paragraph 13 of the Complaint reference a written document that speaks for itself, and United refers to that document for its true meaning and effect. United denies the allegations in Paragraph 13 to the extent they seek to characterize or construe the contents of that document, make improper and inaccurate legal conclusions about the contents of that document, or are otherwise inconsistent with that document. United denies any remaining allegations in Paragraph 13.

14.    **Morgan wrote that Peyton experienced frequent bullying from others due to her weight which left her with body image issues. She had trouble making and keeping friends and was traumatized after a cousin with whom she was very close was murdered.**

**Answer to No. 14.**    Paragraph 14 of the Complaint references a written document that speaks for itself, and United refers to that document for its true meaning and effect. United denies the allegations in Paragraph 14 to the extent they seek to characterize or construe the contents of that document, make improper and inaccurate legal conclusions about the contents of that document, or are otherwise inconsistent with that document. United denies any remaining allegations in Paragraph 14.

15.    **Morgan stated that Peyton frequently lost her temper and was easily dysregulated. She was frequently defiant and self-medicated by smoking cannabis and nicotine. Peyton stole from others and used the stolen money to purchase drugs. Peyton would sometimes refuse to attend school and on more than one occasion, threatened to kill herself. In addition, Peyton was engaging in acts of self-harm.**

**Answer to No. 15.**    Paragraph 15 of the Complaint references a written document that speaks for itself, and United refers to that document for its true meaning and effect. United denies the allegations in Paragraph 15 to the extent they seek to characterize or construe the contents of that

document, make improper and inaccurate legal conclusions about the contents of that document, or are otherwise inconsistent with that document. United denies any remaining allegations in Paragraph 15.

16.    **In October of 2020, Peyton physically assaulted her aunt, and injured her in the altercation. As a result of this, Peyton then received inpatient hospitalization treatment for nine days. Peyton refused to accept responsibility for her actions and became combative with therapists when they tried to get her to acknowledge her accountability.**

**Answer to No. 16.**    United is without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 16, and therefore denies same.

17.    **Morgan wrote that Peyton suffered from conditions which included oppositional defiant disorder, disruptive mood dysregulation disorder, cannabis use disorder, and tobacco use disorder. She stated that Peyton had attempted treatment in other levels of care but this had been unsuccessful.**

**Answer to No. 17.**    Paragraph 17 of the Complaint references a written document that speaks for itself, and United refers to that document for its true meaning and effect. United denies the allegations in Paragraph 17 to the extent they seek to characterize or construe the contents of that document, make improper and inaccurate legal conclusions about the contents of that document, or are otherwise inconsistent with that document. United denies any remaining allegations in Paragraph 17.

18.    **She included a letter of medical necessity from Andrew Hines, LCSW with the appeal. Mr. Hines recounted the circumstances leading to Peyton's treatment and noted that she was finally able to make progress after her admission to New Haven.**

**Answer to No. 18.**    Paragraph 18 of the Complaint references a written document that speaks for itself, and United refers to that document for its true meaning and effect. United denies the allegations in Paragraph 18 to the extent they seek to characterize or construe the contents of that document, make improper and inaccurate legal conclusions about the contents of that document,

or are otherwise inconsistent with that document. United denies any remaining allegations in Paragraph 18.

19.   **Morgan listed the four justifications United had identified in its denial and included arguments and excerpts from Peyton's medical records to refute these justifications.**

**Answer to No. 19.**   Paragraph 19 of the Complaint references a written document that speaks for itself, and United refers to that document for its true meaning and effect. United denies the allegations in Paragraph 19 to the extent they seek to characterize or construe the contents of that document, make improper and inaccurate legal conclusions about the contents of that document, or are otherwise inconsistent with that document. United denies any remaining allegations in Paragraph 19.

20.   **Regarding United's "[y]ou are getting help for your mood and anxiety problems" statement, Morgan included medical records showing, among other things, Peyton crying in the hallway after having an anxiety attack in class, an evaluation showing "a pattern of severe impairment" which made residential treatment necessary to prevent deterioration, and Peyton's subsequent need for inpatient hospitalization.**

**Answer to No. 20.**   Paragraph 20 of the Complaint references a written document that speaks for itself, and United refers to that document for its true meaning and effect. United denies the allegations in Paragraph 20 to the extent they seek to characterize or construe the contents of that document, make improper and inaccurate legal conclusions about the contents of that document, or are otherwise inconsistent with that document. United denies any remaining allegations in Paragraph 20.

21.   **She wrote that Peyton also refused to attend classes at times, was aggressive, was placed on safety status, was disrespectful and combative with staff and peers, and suffered from panic attacks.**

**Answer to No. 21.**   Paragraph 21 of the Complaint references a written document that speaks for itself, and United refers to that document for its true meaning and effect. United denies the

allegations in Paragraph 21 to the extent they seek to characterize or construe the contents of that document, make improper and inaccurate legal conclusions about the contents of that document, or are otherwise inconsistent with that document. United denies any remaining allegations in Paragraph 21.

22.    **Concerning the, "[y]ou have made progress during Residential Care" rationale, Morgan argued that the simple fact that treatment had been effective and a person had made progress, did not mean that further treatment was not needed.**

**Answer to No. 22.**    Paragraph 22 of the Complaint references a written document that speaks for itself, and United refers to that document for its true meaning and effect. United denies the allegations in Paragraph 22 to the extent they seek to characterize or construe the contents of that document, make improper and inaccurate legal conclusions about the contents of that document, or are otherwise inconsistent with that document. United denies any remaining allegations in Paragraph 22.

23.    **She shared some statistics showing that of the students who successfully completed treatment at New Haven, 93% no longer struggled with the primary issue that prompted residential care, 93% reported no longer being depressed, 99% had no desire to self-harm upon discharge, and 87% felt no desire to self-harm a year after discharge. 90% left on track to graduate, and 88% reported coming home to a healthy family system.**

**Answer to No. 23.**    Paragraph 23 of the Complaint references a written document that speaks for itself, and United refers to that document for its true meaning and effect. United denies the allegations in Paragraph 23 to the extent they seek to characterize or construe the contents of that document, make improper and inaccurate legal conclusions about the contents of that document, or are otherwise inconsistent with that document. United denies any remaining allegations in Paragraph 23.

24.    **She wrote that if Peyton were discharged prematurely, "she has a significantly higher chance of not being able to live a healthy and successful life." Morgan included medical record excerpts showing Peyton continuing to struggle with treatment compliance, an inability to maintain healthy relationships, functional impairments, anxiety, depression, feelings of worthlessness and hopelessness, and other factors which made treatment necessary.**

**Answer to No. 24.** Paragraph 24 of the Complaint references a written document that speaks for itself, and United refers to that document for its true meaning and effect. United denies the allegations in Paragraph 24 to the extent they seek to characterize or construe the contents of that document, make improper and inaccurate legal conclusions about the contents of that document, or are otherwise inconsistent with that document. United denies any remaining allegations in Paragraph 24.

25.    **With respect to United's "[y]ou have learned new insights and better coping skills" denial rationale, Morgan reiterated that Peyton was significantly more likely to relapse if she were discharged prematurely. Morgan cited to medical records which showed Peyton struggling to perform basic tasks such as taking care of her hygiene, being noncompliant and combative, and refusing school.**

**Answer to No. 25.** Paragraph 25 of the Complaint references a written document that speaks for itself, and United refers to that document for its true meaning and effect. United denies the allegations in Paragraph 25 to the extent they seek to characterize or construe the contents of that document, make improper and inaccurate legal conclusions about the contents of that document, or are otherwise inconsistent with that document. United denies any remaining allegations in Paragraph 25.

26.    **In regard to United's "[y]ou no longer require around the clock monitoring" justification, Morgan shared medical records which showed that Peyton frequently stole and lied, was aggressive toward adults, used alcohol and drugs, threatened to, or had run away from home, and engaged in inappropriate sexual behaviors.**

**Answer to No. 26.** Paragraph 26 of the Complaint references a written document that speaks for itself, and United refers to that document for its true meaning and effect. United denies the allegations in Paragraph 26 to the extent they seek to characterize or construe the contents of that document, make improper and inaccurate legal conclusions about the contents of that document, or are otherwise inconsistent with that document. United denies any remaining allegations in Paragraph 26.

27. **Morgan wrote that Peyton's psychiatric evaluation from New Haven showed "a pattern of severe impairment which demonstrates the clinical need for 24 hour structure, supervision, and active treatment to prevent a continued deterioration of her condition and subsequent necessity of inpatient care if not in residential treatment."**

**Answer to No. 27.** Paragraph 27 of the Complaint references a written document that speaks for itself, and United refers to that document for its true meaning and effect. United denies the allegations in Paragraph 27 to the extent they seek to characterize or construe the contents of that document, make improper and inaccurate legal conclusions about the contents of that document, or are otherwise inconsistent with that document. United denies any remaining allegations in Paragraph 27.

28. **Morgan referenced an Arizona state statute known as "Jake's Law" which she stated required insurers to treat mental health claims like an annual physical exam and not impose additional barriers to treatment. She wrote that Jake's law was passed after an insurer refused to pay for more than a few days of inpatient hospitalization despite the fervent recommendations of Jake's treatment providers, which led to his suicide.**

**Answer to No. 28.** Paragraph 28 of the Complaint references a written document that speaks for itself, and United refers to that document for its true meaning and effect. United denies the allegations in Paragraph 28 to the extent they seek to characterize or construe the contents of that document, make improper and inaccurate legal conclusions about the contents of that document,

or are otherwise inconsistent with that document. United denies any remaining allegations in Paragraph 28.

29.    **In a letter dated September 13, 2021, United upheld the denial of payment for Peyton's treatment. The letter said that "attempts to reach your provider by phone were unsuccessful," however the letter then contradicted this and stated that United, "talked to your doctor."**

**Answer to No. 29.**    United admits written records in its possession reflect that it sent Plaintiffs a letter dated September 13, 2021. The remaining allegations in Paragraph 29 of the Complaint reference a written document that speaks for itself, and United refers to that document for its true meaning and effect. United denies the allegations in Paragraph 29 to the extent they seek to characterize or construe the contents of that document, make improper and inaccurate legal conclusions about the contents of that document, or are otherwise inconsistent with that document. United denies any remaining allegations in Paragraph 29.

30.    **The letter stated in pertinent part: (emphasis in original)**
**We have denied the medical services requested, MENTAL HEALTH RESIDENTIAL TREATMENT Level of Care as of February 10, 2021. We talked to your doctor.**

**The criteria were not met because:**
    **\* You do not need the care provided in the RESIDENTIAL TREATMENT setting.**

**In your case: You are cooperative and participating in your treatment. You have no withdrawal symptoms and are medically stable. You are taking your medications and doing better. You can control yourself better. You are less depressed and less anxious. You have a more stable mood. You are not acting on every impulse. You have no mental health issues preventing treatment in a less intensive setting.**

**Care and Recovery could continue in the Mental Health PARTIAL HOSPITALIZATION PROGRAM setting. Please discuss these options with your provider.**

**Answer to No. 30.**    Paragraph 30 of the Complaint references a written document that speaks for itself, and United refers to that document for its true meaning and effect. United denies the allegations in Paragraph 30 to the extent they seek to characterize or construe the contents of that document, make improper and inaccurate legal conclusions about the contents of that document, or are otherwise inconsistent with that document. United denies any remaining allegations in Paragraph 30.

31.    **Following this denial, Plaintiffs contacted the Arizona Department of Insurance and requested that the denial of payment be evaluated by an external review agency.**

**Answer to No. 31.**    Paragraph 31 of the Complaint references a written document that speaks for itself, and United refers to that document for its true meaning and effect. United denies the allegations in Paragraph 31 to the extent they seek to characterize or construe the contents of that document, make improper and inaccurate legal conclusions about the contents of that document, or are otherwise inconsistent with that document. United denies any remaining allegations in Paragraph 31.

32.    **In a letter dated December 28, 2021, the Arizona Department of Insurance & Financial Institutions relayed the external review agency's denial of payment of Peyton's treatment. The letter gave the following explanation for why the denial was upheld:**
**The insured is a now 17 year-old female with a past psychiatric history of oppositional defiant disorder, disruptive mood dysregulation disorder, cannabis use disorder, moderate, and tobacco use disorder, moderate who was admitted to a psychiatric residential treatment center on 11/19/20 for treatment of depression, anxiety, suicidal ideation, post-traumatic stress disorder (PTSD), and acting out behaviors. The insured participated in group individual, and family therapy during her residential stay. Psychotropic medications prescribed during her treatment included paroxeline, sertraline, hydroxizine, melatonin, quetiapine, clonidine, and alprazolam. Prior treatment consisted of a brief course of outpatient therapy and one inpatient psychiatric hospitalization.**

- 13 -

The [IRO] physician consultant explained that the American Academy of Child and Adolescent Psychiatry (AACAP) and American Association for Community Psychiatry (AACP) have unified the Child and Adolescent Level of Care Utilization System (CALOCUS) and the Child and Adolescent Service Intensity Instrument (CASII) into a single instrument named the Child and Adolescent Level of Care/Service Intensity Utilization System (CALOCUS-CASII). This instrument is a standardized tool used to determine the intensity of services needed for children and adolescents, from 6 to 18 years of age presenting with psychiatric, substance use, medical and/or developmental concerns. Using CALOCUS-CASII, providers score patients on a scale of 1 to 5 using a sixpronged Dimensional Rating System. The six dimensions include (1) risk of harm; (2) functional status; (3) co-occurrence of developmental, medical, substance use and psychiatric conditions; (4) recovery environment (a. stressors and b. supports); (5) resiliency and response to services; and (6) engagement. The composite score is then used to determine the level of care needed.

Dimension 1- Risk of harm. This dimension assesses potential for harm to self or others, or having harm inflicted upon them. The Insured had a history of aggressive behaviors towards others prior to admission. During the period under review, the Insured did not exhibit any unsafe behaviors, and records do not indicate any ongoing suicidal ideation or self-harm. Given her history, there is some risk of harm. The Insured's score for this Dimension is 2.

Dimension 2- Functional status. This dimension assesses the degree to which a person is able to fulfill responsibilities within developmental constraints. The Insured exhibited moderate functional impairment during the period under review as evidenced by varying levels of school attendance and participation, which improved as time went on. The Insured was noted to have some minor conflicts with peers and to experience frustration, but she did not engage in any unsafe behaviors. The Insured's score for this Dimension is 3.

Dimension 3- Co-occurring developmental, medical, substance use and psychiatric conditions. This dimension assesses the co-existence of disorders across four domains (psychiatric, substance use, medical or developmental) that may complicate the course of treatment. The Insured had significant co-occurrence given her psychiatric diagnoses and several substance use disorders. She also suffered from insomnia, asthma, and seasonal allergies. The Insured's score for this Dimension is 3.

Recovery environment dimension 4A- Stress in the recovery environment. This dimension assesses the stressors in the environment, social circumstances, and interpersonal relationships. The Insured's recovery

**environment appeared to be moderately stressful due to the deaths of several loved ones in the recent years, lack of friendships, and exposure to substances. The Insured's score for this Dimension is 3.**

**Recovery environment dimension 4B- Support in the recovery environment. This dimension assesses the presence of family and social support to augment the recovery environment. The Insured's recovery environment appeared to be supportive as evidenced by familial involvement in her treatment. The Insured's score for this dimension is 2.**

**Dimension 5- Resiliency and Response to Services- This dimension assesses how past experiences with treatment and recovery might indicate how the insured might respond in the future. The Insured's prior treatment included several outpatient treatment sessions and one inpatient psychiatric hospitalization just prior to her admission to the residential treatment center services. The Insured has shown equivocal resiliency and response to treatment. The Insured's score for this dimension is 3.**

**Dimension 6- Engagement. This dimension has two subscales. Child and Adolescent Subdimension: The child and adolescent sub-dimension assess [sic] the ability to form therapeutic relationships within developmental constraints. Early on in treatment, the Insured was not engaged. However, records from February onwards indicate that she had adequate engagement. The Insured's score for this sub dimension is 2. Parental and Primary Caregiver Sub-dimension: The parent sub-dimension assesses the ability of the parent or caregiver to form collaborative engagement with the clinician, defining their role in the therapeutic problem, and taking an active role in treatment planning. Parents appear to be adequately engaged in their daughter's treatment. The Insured's score for this subdimension is 2.**

**These findings give the insured a composite score of 18, which is consistent with Level 3- Low Intensity Community Based Services. For this reason, the requested inpatient mental health residential level of care on and after 2/10/21 was not medically necessary for treatment of the Insured's condition.**

**Answer to No. 32.** Paragraph 32 of the Complaint references a written document that speaks for itself, and United refers to that document for its true meaning and effect. United denies the allegations in Paragraph 32 to the extent they seek to characterize or construe the contents of that document, make improper and inaccurate legal conclusions about the contents of that document,

or are otherwise inconsistent with that document. United denies any remaining allegations in Paragraph 32.

33.    **The Plaintiffs exhausted their prelitigation appeal obligations under the Plan and ERISA.**

**Answer to No. 33.**    The allegations in Paragraph 33 constitute legal assertions to which no response is required.

## Spring Ridge

34.    **In a series of letters dated January of 2022, United requested medical records to assess whether it would approve treatment for services rendered at Spring Ridge.**

**Answer to No. 34.**    Paragraph 34 of the Complaint references written documents that speak for themselves, and United refers to those documents for their true meaning and effect. United denies the allegations in Paragraph 34 to the extent they seek to characterize or construe the contents of those documents, make improper and inaccurate legal conclusions about the contents of those documents, or are otherwise inconsistent with those documents. United denies any remaining allegations in Paragraph 34.

35.    **Beginning in February of 2022, Spring Ridge, acting on Peyton's behalf, responded to the medical record requests and attached copies of Peyton's medical records. Spring Ridge asked that if United denied payment after receiving these records that it provide Spring Ridge with written notice of the decision along with information concerning which specific criteria were allegedly not met.**

**Answer to No. 35.**    Paragraph 35 of the Complaint references written documents that speak for themselves, and United refers to those documents for their true meaning and effect. United denies the allegations in Paragraph 35 to the extent they seek to characterize or construe the contents of those documents, make improper and inaccurate legal conclusions about the contents of those

documents, or are otherwise inconsistent with those documents. United denies any remaining allegations in Paragraph 35.

36. **United continued to request records in additional letters and Spring Ridge continued to provide them, at times highlighting pertinent sections of the medical records which attested to the medical necessity of Peyton's treatment.**

**Answer to No. 36.** Paragraph 36 of the Complaint references written documents that speak for themselves, and United refers to those documents for their true meaning and effect. United denies the allegations in Paragraph 36 to the extent they seek to characterize or construe the contents of those documents, make improper and inaccurate legal conclusions about the contents of those documents, or are otherwise inconsistent with those documents. United denies any remaining allegations in Paragraph 36.

37. **On September 28, 2022, on Peyton's behalf, Spring Ridge appealed United's denial of payment. Spring Ridge stated that Peyton required the structured treatment she was receiving, as without this intervention she was potentially dangerous to herself.**

**Answer to No. 37.** United admits that written records in its possession show that Spring Ridge submitted a letter to United on September 28, 2022. The remaining allegations in Paragraph 37 reference a written document that speaks for itself, and United refers to that document for its true meaning and effect. United denies the allegations in Paragraph 37 to the extent that they seek to characterize or construe the contents of that document, make improper and inaccurate legal assertions about the contents of that document, or are otherwise inconsistent with that document. United denies any remaining allegations in Paragraph 37.

38. **Spring Ridge wrote that Peyton was only being kept in treatment for as long as was necessary according to best practice standard guidelines and that she would be released from treatment as soon as was clinically appropriate. Spring Ridge included copies of Peyton's medical records with the appeal.**

**Answer to No. 38.**     Paragraph 38 of the Complaint references a written document that speaks for itself, and United refers to that document for its true meaning and effect. United denies the allegations in Paragraph 38 to the extent they seek to characterize or construe the contents of that document, make improper and inaccurate legal conclusions about the contents of that document, or are otherwise inconsistent with that document. United denies any remaining allegations in Paragraph 38.

39.     **Spring Ridge submitted a second appeal dated October 24, 2022, again stating that Peyton was a potential danger to herself outside of treatment and stating that she would be transferred to a lower level of care as soon as was clinically appropriate.**

**Answer to No. 39.**     United admits that records in its possession show that Spring Ridge submitted a letter to United on October 24, 2022. The remaining allegations in Paragraph 39 reference a written document that speaks for itself, and United refers to that document for its true meaning and effect. United denies the allegations in Paragraph 39 to the extent that they seek to characterize or construe the contents of that document, make improper and inaccurate legal assertions about the contents of that document, or are otherwise inconsistent with that document. United denies any remaining allegations in Paragraph 39.

40.     **Despite Spring Ridge's appeals and the information contained in the medical records provided, United continued to uphold the denials, claiming that it had not received the documentation it had requested.**

**Answer to No. 40.**     Paragraph 40 of the Complaint references a written document that speaks for itself, and United refers to that document for its true meaning and effect. United denies the allegations in Paragraph 40 to the extent they seek to characterize or construe the contents of that document, make improper and inaccurate legal conclusions about the contents of that document,

or are otherwise inconsistent with that document. United denies any remaining allegations in Paragraph 40.

41. **The Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.**

**Answer to No. 41.** The allegations in Paragraph 41 constitute legal assertions to which no response is required. To the extent a response is required, United denies the allegations in Paragraph 41.

42. **The denial of benefits for Peyton's treatment was a breach of contract and caused Michael to incur medical expenses that should have been paid by the Plan in an amount totaling over $440,000.**

**Answer to No. 42.** United denies the allegations in Paragraph 42.

## CAUSE OF ACTION

### (Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))

43. **ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as United, acting as agent of the Plan, to discharge its duties in respect to claims processing solely in the interests of the participants and beneficiaries of the Plan. 29 U.S.C. §1104(a)(1).**

**Answer to No. 43.** The allegations in Paragraph 43 constitute legal conclusions to which no response is required. To the extent a response is required, United denies the allegations in Paragraph 43.

44. **United and the Plan failed to provide coverage for Peyton's treatment in violation of the express terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders.**

**Answer to No. 44.** United denies the allegations in Paragraph 44.

45. **ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim**

**denials and to engage in a meaningful dialogue with the Plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).**

**Answer to No. 45.**     United admits that 29 U.S.C. § 1133(2) states that "every employee benefit plan shall afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." United denies the remaining allegations contained in Paragraph 45.

46.     **United and the agents of the Plan breached their fiduciary duties to Peyton when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in Peyton's interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries and to provide a full and fair review of Peyton's claims.**

**Answer to No. 46.**     United denies the allegations in Paragraph 46.

47.     **The actions of United and the Plan in failing to provide coverage for Peyton's medically necessary treatment are a violation of the terms of the Plan and its medical necessity criteria.**

**Answer to No. 47.**     United denies the allegations in Paragraph 47.

48.     **In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g).**

**Answer to No. 48.**     United denies the allegations in Paragraph 48.

* * * * *

United denies any allegations inherent in Plaintiffs' prayer for relief. All allegations in the Complaint not expressly and specifically admitted herein are denied.

## **DEFENSES**

By listing a defense herein, United is not representing that the defense is an affirmative defense or that United bears the burden of proof. As separate and distinct defenses to Plaintiffs' claims for relief, and each of them, in the Complaint, United alleges as follows:

- 20 -

**FIRST DEFENSE**

The Complaint, and each cause of action stated therein, fails to state a claim upon which relief can be granted.

**SECOND DEFENSE**

The claims for which Plaintiffs seek recovery are barred in whole or in part because the claims asserted are not payable under the terms of any insurance or benefit plan(s) at issue herein by virtue of the plan terms and limitations contained therein.

**THIRD DEFENSE**

Plaintiffs' claims may be barred, in whole or in part, by their failure to properly or adequately mitigate their claimed damages, if any, by continuing to pursue medical treatment that was not covered by the Plan, rather than medical treatment that might have been approved under the terms of the Plan, if any.

**FOURTH DEFENSE**

All actions about which Plaintiffs complain were either required or permitted by applicable law.

**FIFTH DEFENSE**

Any alleged damages suffered by Plaintiffs were not proximately or legally caused by any action or omission on behalf of United.

**SIXTH DEFENSE**

United asserts that it had, and continues to have, a reasonable and good faith basis for denying Plaintiffs' claims.

**SEVENTH DEFENSE**

Plaintiffs' claims are barred by a failure to satisfy conditions precedent.

- 21 -

**EIGHTH DEFENSE**

Plaintiffs' claims are barred in whole or in part because United's alleged obligations, if any, have been fulfilled and discharged.

**NINTH DEFENSE**

The claims and remedies sought by Plaintiffs, if viable, would need to be reduced by all applicable terms and conditions of the Plan documents. Any benefits under the Plan would be subject to Plan limitations, offsets, deductions, or adjustments.

**TENTH DEFENSE**

The claims and remedies sought by Plaintiffs are limited solely to those provided under ERISA, and all remedies and claims made by Plaintiffs not provided for under ERISA are preempted.

**ELEVENTH DEFENSE**

Plaintiffs' claim for benefits is limited to the lesser of the amount due under the terms of the Plan and the amount actually paid by Plaintiffs.

**TWELFTH DEFENSE**

Plaintiffs' claims are barred, in whole or in part, to the extent that Plaintiffs failed to exhaust their administrative remedies.

**RESERVATION OF RIGHTS**

United reserves the right to subsequently assert and add defenses to the Complaint, and any part and/or whole thereof, as they become known to United, including but not limited to conditions and/or exclusions and contractual defenses in the event of discovery of further information

regarding Plaintiffs' claims, the underlying action(s), and/or the provisions, terms and conditions of any and all applicable benefit plan(s) at issue.

WHEREFORE, United pray for judgment as follows:

A.  that the Complaint be dismissed with prejudice on its merits;

B.  that Plaintiffs take nothing by their Complaint;

C.  that United be awarded judgment against Plaintiffs in the amount of all attorneys' fees and costs incurred by United herein; and

D.  that the Court grant such other and further relief to United as the Court deems proper.

Dated: February 18, 2025                    Respectfully submitted,

/s/ *Rebecca R. Hanson*

Rebecca R. Hanson (admitted *pro hac vice*)
Taylor A. Marcusson (admitted *pro hac vice*)
**REED SMITH LLP**
10 S. Wacker Dr., 40th Floor
Chicago, IL 60606
Telephone: (312) 207-1000
rhanson@reedsmith.com
tmarcusson@reedsmith.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service.

*/s/ Rebecca R. Hanson*